**NICHOLAS & TOMASEVIC, LLP**
  Craig M. Nicholas (SBN 178444)
  Alex Tomasevic (SBN 245598)
  Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:  (619) 325-0492
Facsimile:   (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**GLICK LAW GROUP, P.C.**
  Noam Glick (SBN 251582)
  Kelsey D. McCarthy (SBN 305372)
225 Broadway, Suite 2100
San Diego, California 92101
Telephone: (619) 382-3400
Facsimile:   (619) 615-2193
Email: noam@glicklawgroup.com
Email: kelsey@glicklawgroup.com

Attorneys for Plaintiff
CIERRA DAVIS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIERRA DAVIS, on behalf of herself and on behalf of other current and former employees similarly situated;<br><br>        Plaintiffs,<br><br>vs.<br><br>RED EYED JACK'S SPORTS BAR, INC. dba CHEETAHS GENTLEMEN'S CLUB or CHEETAHS NIGHTCLUB, a Nevada Corporation; SUZANNE COE, an individual;<br><br>        Defendants. | Case No.   '17CV1111 BEN JMA<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  FAILURE TO PAY WAGES DUE UNDER THE FAIR LABOR STANDARDS ACT;**<br><br>**(2)  VIOLATIONS OF THE CALIFORNIA LABOR CODE;**<br><br>**(3)  CONVERSION; AND**<br><br>**(4)  VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.*** |

Plaintiff Cierra Davis (hereinafter referred to as "Plaintiff"), on behalf of herself and those similarly situated, based upon facts which either have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

## INTRODUCTION

1.  This is a hybrid collective action under the federal Fair Labor Standards Act, 29 United States Code ("U.S.C.") section 201, *et seq.* (the "FLSA") as well as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") for violations of California state law by Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club or Cheetahs Nightclub ("Cheetahs") and its owner, Suzanne Coe (collectively referred to as "Defendants").

2.  Cheetahs is a gentlemen's club in San Diego, California that fails to pay minimum wages and overtime. Cheetahs also unlawfully docks wages from dancers, unlawfully demands and accepts gratuities and/or tips, retains a part of gratuities and/or tips rightfully belonging to its dancers, and refuses to provide other benefits required by law.

3.  Defendants misclassified and continue to misclassify and/or designate these dancer employees as "independent contractors." As a result, Defendants fail to pay Plaintiff and her fellow dancers the minimum wages that they are entitled to under the law. Plaintiff, on behalf of herself and her fellow dancers, brings this action seeking damages, back pay, restitution, liquidated damages, prejudgment interest, reasonable attorneys' fees and costs, and all other appropriate relief.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. sections 1331 and 1343(a)(4) because these claims seek redress for violations of Plaintiff's federal civil and statutory rights.

5.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section 1367(a) because these claims are so closely related to

Plaintiff's federal claims that they form parts of the same case or controversy under Article III of the United States Constitution.

6.     This Court has jurisdiction over Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club or Cheetahs Nightclub because it is a Nevada corporation that conducts substantial business in California and intentionally availed itself to the laws and markets of California through operation of its business in California.

7.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. sections 1391(b) and (c), as a substantial part of the events or omissions giving rise to the claims that occurred in this judicial District.

## **PARTIES**

8.     Plaintiff Cierra Davis is, and at all times was, a citizen of the state of California and a resident of San Diego County.  Ms. Davis is an aggrieved former employee of Cheetahs.  Cheetahs hired Ms. Davis as an adult entertainer or dancer in or around June 2014.  Ms. Davis worked at Cheetahs about seven days per week, from approximately 6:00 p.m. to 2:00 a.m.  Defendants refused to compensate Ms. Davis as a dancer for her time working at the club.  Among other things, Ms. Davis never received minimum wage or any other compensation from Cheetahs.

9.     Plaintiff and her fellow dancers are current and former employees of Cheetahs within the meaning of the FLSA and California labor laws.  Accordingly, the FLSA and the California Labor Code also applied to Plaintiff and her fellow dancers during the period they worked at Cheetahs.

10.     Defendant Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club or Cheetahs Nightclub ("Cheetahs") is, and at all times mentioned was, a corporation organized and existing under the laws of Nevada, registered to do business and doing business in San Diego County, California.  Cheetahs regularly employs now, as well as for the duration of the liability period, hundreds of employees.

11.     Cheetahs is on Clairemont Mesa Boulevard in San Diego, California. It claims to be "San Diego's premier all nude strip club.  Cheetahs employs "the largest

COLLECTIVE AND CLASS ACTION COMPLAINT

variety of adult entertainers in all of San Diego." It is open seven days per week, Sunday through Saturday, from noon to 2:00 a.m. But, to keep its costs down and profits high, Cheetahs unlawfully refuses to pay these young women adult entertainers—the crux of its business model—minimum wage. To make matters worse, Cheetahs mandates that these women *pay Cheetahs* 1) a $40–$80 "house fee" each shift simply for working there, *and* 2) a fee and/or percentage of their hard-earned gratuities to the door, manager, and DJ each and every shift.

12.　　In order to attract new entertainers, Cheetahs, on its own website under "Employment," has touted itself as having "the lowest tip out in San Diego." Cheetahs also provides instructions on how to "become a Cheetahs entertainer" on the "Employment" page of its website.

13.　　At all relevant times, Cheetahs has been the employer of Plaintiff and her fellow dancers under the FLSA and the California Labor Code. Cheetahs permitted Plaintiff and her fellow dancers to work. Cheetahs directly or indirectly employed and exercised significant control over the wages, hours, and working conditions of its dancers and entertainers, including Plaintiff.

14.　　Defendant Suzanne Coe is, and all times mentioned was, an individual residing in South Carolina. Upon information and belief, Ms. Coe does business in the state of California and owns, operates, controls, and/or manages Cheetahs and is an alter ego of Cheetahs. Ms. Coe permitted Plaintiff and her fellow dancers to work.

15.　　Plaintiff does not know the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sues them by fictitious names. Plaintiff is informed and believes DOES 1 through 100, inclusive, are in some way responsible for the events and the aggrieved employees' damages described in this Complaint. Plaintiff will seek leave to amend this Complaint when the true names and capacities of these defendants have been ascertained.

16.　　At all relevant times, Defendants and DOES 1 through 100, jointly, employed all of the dancers and entertainers working at Cheetahs Gentlemen's Club,

managed, directed, and controlled the operations at Cheetahs Gentlemen's Club, and dictated the common employment policies applicable to Cheetahs Gentlemen's Club, including, but not limited to, decisions to: (a) misclassify dancers and entertainers as independent contractors, as opposed to employees, (b) require that dancers and entertainers split their tips and/or gratuities with Cheetahs, (c) not pay any dancers or entertainers any wages whatsoever, including minimum wages, (d) adopt and implement employment policies that violate the FLSA and the California Labor Code, (e) require that dancers pay a fee simply to work at Cheetahs, and (f) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.

17. Plaintiff is informed and believes, and based thereon alleges, that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to the other defendants.

18. Upon information and belief, at all times relevant, each of the Defendants was the agent, employee, alter ego, and/or joint venture of, or working in concert with each of the other co-Defendants, and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified those acts, conduct, and omissions of the acting defendant.

## ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

**A. Defendants, as a Matter of Policy, Misclassified Dancers as "Independent Contractors" and Refused to Pay Dancers for All Hours Worked, Including Minimum Wage, and Refused to Provide All Required Rest Breaks.**

19. Defendants classified, and continue to classify all of their employees who work as adult entertainers and dancers, including Plaintiff, as "independent

COLLECTIVE AND CLASS ACTION COMPLAINT

contractors." Defendants' classification of Plaintiff and her fellow dancers as independent contractors was not due to any unique factor related to their employment or relationship with Cheetahs. Such misclassification was routine, uniform, and a matter of business policy. As a result of this uniform misclassification, Plaintiff and her fellow dancers were denied minimum wages required under the FLSA and the California Labor Code and, therefore, suffered injury and incurred financial loss.

20. During the relevant time period, no dancers received any wages—or any form of compensation—from Cheetahs. Plaintiff and her fellow dancers generated their own income solely through tips and/or gratuities received from patrons when they performed dance services.

21. Dancers, including Plaintiff, worked either on day shifts or night shifts. Dancers on the day shift work seven or eight hours, without a break, per shift, (e.g., 12:00 p.m. to 7:00 p.m.). Night shift dancers also worked long hours, typically from approximately 7:00 p.m. to 2:00 a.m., around when the club closed, and also without breaks.

22. At the beginning of each shift, Cheetahs required dancers, including Plaintiff, to pay a daily "house fee" simply for showing up for work. The minimum fee per shift is $50. This fee could increase by $10 for every hour after 6:00 p.m., depending on when the dancer or entertainer arrives to work. Specifically, if the dancer checks in between 12:00 p.m. and 6:00 p.m., the fee is only $50. However, if a dancer arrives and checks in at 8:00 p.m., the "house fee" is $70. In sum, the later an entertainer arrived, the higher the fee. Plaintiff paid these forced fees.

23. Upon information and belief, if a dancer cannot pay the "house fee," Cheetahs will force dancers to stay after hours (i.e., after the club closes at 2:00 a.m.) to clean the facility.

24. As a matter of company policy, Cheetahs made its employees, including Plaintiff and her fellow dancers, work lengthy shifts, without breaks, irrespective of California Labor Code protections.

25.     All monies Plaintiff and her fellow dancers received from guests when they performed dance services were tips and/or gratuities—not wages or service fees.[1] Under both the FLSA and California labor law, tips belong to and are the property of the person they are given to. *See Oregon Restaurant and Lodging Ass'n et al. v. Perez,* 816 F.3d 1080, 1095 (9th Cir. 2016) (under the FLSA, tips are the tipped employee's property, absent a valid tip pool or tip credit agreement); *see also* Cal. Lab. Code § 350(e)(all monies given to dancers by guests are considered gratuities and thus, are property of the dancers).     But Cheetahs had a uniform tip skimming policy and Plaintiff was forced to comply with that policy.     Cheetah's posted the requirements of that tip policy, at times, in the dancer dressing rooms.     Cheetah's uniform policy and practice regarding tips violates federal and state wage and hour laws.

26.     Furthermore, Plaintiff and her fellow dancers were forced to pay fees or to tip-out a substantial percentage of all of their daily earnings to the "DJ" and/or "door" and/or "manager."     Plaintiff and her fellow dancers paid those charges or fees based on statements, representations, or understandings that failure to comply with Cheetahs' request would prevent them from procuring or retaining employment with Cheetahs.

27.     No exceptions to the application of the FLSA and/or the California Labor Code apply to Plaintiff and her fellow dancers.     By way of example, no dancer has ever been a professional or artist exempt from the provisions of the FLSA and/or the California Labor Code.     The dancing services performed by dancers while working at Cheetahs do not require invention, imagination, or talent in the recognized field of artistic endeavor, and dancers have never been compensated by Cheetahs on a set salary, wage, or fee basis.     In contrast, Plaintiff and her fellow dancers' sole source of

_____

[1] Upon information and belief, the full amount dancers are given by guests in relation to the dances they perform are not taken into account for purposes of Cheetahs' gross receipts, with a portion then paid out to the dancers.  Cheetahs does not issue 1099 or W-2 forms to dancers indicating any amounts being paid from its gross receipts to dancers for service fees or wages.

income while working at Cheetahs has exclusively been through tips or gratuities paid by guests of Cheetahs.

28.    Cheetahs controls the work environment. It offers—and strictly regulates—four types of predetermined dance services, which entertainers must follow and comply with:

(a)    Pursuant to Cheetahs' website, on weekdays, from noon until 7:00 p.m., Cheetahs offers $10 dances, which typically last the duration of one song. In practice, however, these $10 dances are offered all day;

(b)    According to Cheetahs' website, daily until 10:00 p.m., Cheetahs also offers $20 dances, which last about four songs;

(c)    For guests who prefer a private dance setting, patrons can "[g]et intimate in [Cheetahs'] private VIP dance area." For $100, patrons receive a five song, private performance. Cheetahs mandates that dancers are fully-clothed during all private dances;

(d)    Finally, patrons can enjoy Cheetahs' "ICE BOX," which is "a room all to yourself for [sic] $50 for half an hour or $20 a song. Your choice." In reality, these "Ice Box" dances run customers $350, not $50, as listed on Cheetahs' website.

29.    Of the tips earned from dances, Cheetahs requires that entertainers, including Plaintiff, pay 10% to the "manager," 5% to the "door," and 5% to the "DJ." Therefore, 20% of dancers' tips and gratuities go back to Cheetahs.

30.    Cheetahs, not the dancers, sets up and exclusively controls the minimum tip amounts that dancers must collect from patrons when performing private and/or semi-private and/or stage dances. Cheetahs also regulates the tip-splitting and allocation described above, including the dancers' obligation to collect tips up front.

31.    Plaintiff and her fellow dancers have all received tips and gratuities from Cheetahs' guests within the relevant statutory period. In violation of both the FLSA

and the California Labor Code, Cheetahs has taken tips and gratuities received by Plaintiff and her fellow dancers through the club's policy with respect to tipping out or sharing gratuities with the DJ, door, and manager, as well as through the imposition of "house fees." Upon information and belief, these monies, fees, and penalties, or at least a portion thereof, ultimately go to Defendants.

32.    The California Labor Code does not permit tip credits offsetting any minimum wages. *See* Cal. Lab. Code § 351. Although the FLSA does permit tip credits to offset the federal minimum wage of $7.25 (with an allowable maximum tip credit up to $5.12 per hour), employers are required to: (1) still pay the tipped employee a minimum cash wage obligation of $2.13, and (2) provide mandatory notifications to the employee prior to being allowed to use the FLSA tip credit— neither of which were provided to Plaintiff or her fellow dancers. *See* 29 U.S.C. § 203(m). As a consequence, as employees of Cheetahs, current and former dancers are entitled to *both* receipt of the full minimum wage due under the FLSA and/or the California Labor Code, without any tip credit, *and* to retain all tips and gratuities given to them by guests when they perform dances.

### 1.    The legal Definition of "Employee" is Very Broad.

33.    Employment is defined with "striking breadth" in the wage and hour laws. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 325–326 (1992). The determining factor as to whether dancers like Plaintiff and her fellow dancers are employees or independent contractors under the FLSA and/or the California Labor Code is not the dancer's election, subjective intent, or any contract. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947); *see also Real v. Driscoll Strawberry Associates, Ltd.,* 603 F.2d 748, 755 (9th Cir. 1979). Rather, the test for determining whether an individual is an "employee" under both the FLSA and the California Labor Code is the economic realities test. The economic realities test applicable to the wage and hour laws is far broader than other tests for employee status, such as those under the tax laws or under the common law. Under the economic

COLLECTIVE AND CLASS ACTION COMPLAINT

realities test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

34.     As a District Court in New York observed, when determining whether dancers at a strip club are employees under the Fair Labor Standards Act, "[n]early, without exception, [] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. Sept. 10, 2013) (collecting cases) (citations and internal quotation marks omitted).

35.     Courts utilize several factors to determine economic dependence and employment status. These factors are the: (i) degree of control exercised by the alleged employer, (ii) relative investments of the alleged employer and employee, (iii) degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) skill and initiative required in performing the job, (v) permanency of the relationship, and (vi) degree to which the alleged employee's tasks are integral to the employer's business. Each of these factors are addressed below.

36.     The totality of circumstances surrounding the employment relationship between Defendants and the dancers establishes economic dependence by the dancers on Defendants with regard to their employment status. Here, as a matter of economic reality, Plaintiff and her fellow dancers are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Cheetahs. The dancers are not engaged in occupations or businesses distinct from that of Defendants. Rather, their work and presence is integral to the success of Defendants' business. Defendants obtain guests who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Cheetahs. Defendants retain pervasive control over the club's operation as a whole, and the dancers' duties are a core, vital function of the operation.

2.    *Plaintiff and her Fellow Dancers Exercise No Control over Defendants' Business Practices.*

37.    Plaintiff and her fellow dancers do not exert control over a meaningful part of Cheetahs' business and do not stand as separate economic entities from Cheetahs.  The contrary is true.

38.    Defendants exercise tight control over all aspects of the working relationship with Plaintiff and her fellow dancers, including but not limited to:

(a)    Oral guidelines, which detail dancer conduct and behavior;

(b)    Strict rules applicable to all dancers who worked for Cheetahs;

(c)    Regulating dancers' behavior while at Cheetahs;

(d)    Requiring that all dancers must perform on stage and setting a rotation;

(e)    Regulating locker use;

(f)    Setting procedures for checking in with the DJ;

(g)    Setting procedures for checking out, including by tipping-out the DJ, door, and manager;

(h)    Determining, setting, and regulating fees that dancers were required to pay;

(i)    Regulating the method and manner that the dancers could dance (while on the main stage and in the semi-private rooms);

(j)    Controlling dancers' conduct while on the floor;

(k)    Dictating tip and/or gratuity splits; and

(l)    All other terms and conditions of employment.

39.    Defendants—not the entertainers or dancers—also exclusively control their own operation.  Among other things, Defendants:

(a)    Are in charge of their own advertising and marketing, including discounts, happy hour offerings, providing complimentary drinks to entice patrons, social media, and the like, without which dancers

like Plaintiff and her fellow dancers could not survive economically;

    (b)    Set the hours of operation;

    (c)    Control and/or manage Cheetahs' website promoting its services;

    (d)    Hire Cheetahs' waitresses, bouncers, managers, DJ, dancers, and other workers;

    (e)    Determine prices for dances;

    (f)    Provide sound and lighting for dances; and

    (g)    Set the theme, atmosphere, and flow of the club.

40.    Plaintiff's and her fellow dancers' economic status is inextricably linked to those conditions over which Defendants have complete control. Plaintiff and her fellow dancers are completely dependent on Defendants for their earnings.

41.    In sum, the totality of the circumstances surrounding the employment relationship between Defendants and the dancers demonstrates that Defendants set the terms and conditions of the dancers' work—the hallmark of economic dependence.

    *3.*    *Defendants Have Far Greater Investment in Their Club Than the Dancers.*

42.    As detailed above, Defendants, not dancers like Plaintiff and her fellow dancers, manage all aspects of Cheetahs' business operations including: attracting guests through advertising, promotions, and marketing; choosing the business location; establishing hours of operation; setting and determining the atmosphere, including aesthetics and décor; and controlling and compensating staff (managers, waitresses, bouncers, cleaners, etc.).

43.    Cheetahs is also responsible for the use, payment, and maintenance of its facilities, including sound, lighting, furniture, bar and kitchen supplies, and restrooms. Further, Cheetahs sets the price for cover charges and can, in its discretion, offer promotions so that guests can enter the club without a fee or for a reduced fee. For example, Cheetahs is currently promoting "SATURDAY BYOG." BYOG stands for

"bring your own girl." As Cheetahs explains, "every Saturday, couples save $20.00 at Cheetahs. Bring your significant other and you do not pay a cover charge. You just pay $10.00 for 2 non-alcoholic drinks. That's better than paying the $20.00 entrance fee." Cheetahs also regulates the costs of each dance type, as outlined above.

44. Neither Plaintiff nor her fellow dancers control key aspects impacting profits and losses. For example, Plaintiff and her fellow dancers are and/or were not responsible for Cheetahs' ongoing business risk, financing, acquisition and/or lease of physical facilities and/or equipment, inventory, obtaining appropriate business insurance and licenses, ensuring compliance with applicable rules, regulations, laws, and the like.

45. As the Fifth Circuit succulently stated, dancers, like Plaintiff and her fellow dancers, are "far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments." *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 328 (5th Cir. 1993).

*4. Plaintiff and her Fellow Dancers Do Not Exercise the Skill and Independent Initiative of Those in Business for Themselves.*

46. Many dancers at Cheetahs, including Plaintiff, had little or no prior experience with dancing before working at Cheetahs. Defendants do not mandate that dancers have any specialized or unusual skills to work at the club as a dancer.

47. Defendants do not require that dancers have any formal dance training or prior experience as an exotic dancer or adult entertainer. There are no dance classes, specialized training, instructions, or choreography provided or required in order to work at Cheetahs.

48. A dancer at Cheetahs owns no enterprise and does not exercise business management skills. The scope of a dancer's initiative is limited to decisions involving what clothes to wear (within Cheetahs' guidelines) or how provocatively to dance (also restricted by the confines of Cheetahs' rules), which is consistent with the status of an employee as opposed to that of an independent contractor.

49. Further, Plaintiff and her fellow dancers are not permitted to hire or subcontract other qualified individuals to provide dances to guests or increase her revenues, as an independent contractor in business for herself normally would.

50. Not surprisingly, courts have consistently held that there is limited genuine skill required to be an exotic dancer. *See Circle C., supra,* 998 F.2d at 328 (topless, nude, or exotic dancers "do not exhibit the skill or initiative indicative of persons in business for themselves"); *see also Reich v. Priba Corp.,* 890 F. Supp. 586, 593 (N.D. Tex. Mar. 27, 1995) (dancers "do not have the opportunity to exercise the skill and initiative necessary to elevate their status to that of independent contractors").

     *5.    The Duration and Permanency of a Working Relationship at Cheetahs.*

51. Upon information and belief, Plaintiff and her fellow dancers have worked at Cheetahs for significant periods of time.

52. In any event, because entertainers tend to be itinerant, "the court must focus on the nature of their dependence." *Priba Corp.*, *supra*, 890 F. Supp. at 593.

     *6.    Plaintiff's and her Fellow Dancers' Performances and Services are Absolutely Essential and Integral to Cheetahs' Business Model.*

53. Plaintiff and her fellow dancers were and are vital to the continued success and operation of Cheetahs. Cheetahs does not sell alcohol. Cheetahs attracts guests to frequent the club to view and be entertained by dancers' physical attributes and performances.

54. Cheetahs is able to charge admission fees or "covers" and a higher price for non-alcoholic beverages and energy drinks than establishments without exotic dancers because "diverse and beautiful women," like Plaintiff and her fellow dancers, are the main attraction of Cheetahs.

55. In short, the dancers, including Plaintiff, were and are an integral part of Cheetahs' business.

**B.** **Defendants Intentionally Misclassified Dancers as Independent Contractors and Caused Dancers, Like Plaintiff and her Fellow Dancers, Damage.**

56. All of Defendants' actions, including the misclassification of their entertainers and dancers, were willful, intentional, deliberate, and not the result of mistake or inadvertence.

57. Defendants were aware of the FLSA and California Labor Code as applied to the operation of their gentlemen's club in California. At all relevant times, and under the applicable economic realities test, Defendants misclassified their dancers, including Plaintiff and her fellow dancers, as independent contractors.

58. Defendants were also aware of industry-related labor suits and enforcement actions in state and federal judicial forums. In fact, the precise issue before the Court here—whether adult entertainment and exotic dancers are independent contractors or employees—has been the subject of previous enforcement actions by the State of California's Department of Industrial Relations. In the vast majority of those prior cases, dancers working under similar conditions, as at Cheetahs, were determined to be employees, not independent contractors, under wage and hour laws. *See*, *e.g.*, *Hart*, *supra*, 967 F. Supp. 2d at 921 (collecting cases); *see also Harrell v. Diamond A. Entm't, Inc.* 992 F. Supp. 1343, 1348 (M.D. Fla. 1997) (collecting cases).

59. Despite being on notice of their violations, Defendants chose to continue to misclassify dancers, including Plaintiff and her fellow dancers, without payment of minimum wages and other monies, in an effort to enhance their own profits and for their own economic advantage.

60. Plaintiff and her fellow dancers suffered injury, incurred damage and financial loss as a result of Defendants' conduct. Among other things, Plaintiff and her fellow dancers are entitled to minimum wages and to retain all of the tips given to them by guests. By failing to pay Plaintiff and her fellow dancers minimum wages

and by interfering with their right to retain all of their tips and/or gratuities, Defendants injured Plaintiff and her fellow dancers and caused them financial loss and damage.

## COLLECTIVE ACTION ALLEGATIONS

61. By its actions described in this complaint, Defendants violated the FLSA and Plaintiff now brings a collective action for violations of the FLSA on behalf of the COLLECTIVE ACTION GROUP, which is defined as:

> All persons nationwide who were, are, or will be employed by Defendants as dancers or entertainers at Cheetahs Gentlemen's Club ("Cheetahs") in San Diego, California, and are/were designated and/or classified by Cheetahs as an "independent contractor" during the period commencing three years prior to the filing of this Complaint and ending on the date as the Court shall determine.

62. To the extent equitable tolling operates to toll claims by the COLLECTIVE ACTION GROUP against the Defendants, the applicable statute of limitations and period for calculating damages should be adjusted accordingly.

63. Plaintiff brings this lawsuit on behalf of herself individually and the COLLECTIVE ACTION GROUP as a collective action. Defendants are engaged in communication, business, and transmission throughout the United States and are, therefore, engaged in commerce within the meaning of 29 U.S.C. section 203(b).

64. The FLSA states that an employee must be compensated for all hours worked, including all straight time compensation and overtime compensation. *See* 29 C.F.R. §§ 778.223, 778.315.

65. Defendants have willfully, deliberately, and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA by refusing to pay required wages.

66. This action should be treated as a collective action because:

    (a) The persons who comprise the COLLECTIVE ACTION GROUP exceed 100 persons and are therefore so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

1

(b)  Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the COLLECTIVE ACTION GROUP and will apply uniformly to every member of the COLLECTIVE ACTION GROUP;

(c)  The claims of the representative Plaintiff are typical of the claims of each member of the COLLECTIVE ACTION GROUP. Plaintiff, like all other members of the COLLECTIVE ACTION GROUP, was subjected to Defendants' illegal practice of: misclassifying dancers and entertainers as independent contractors, as opposed to employees; requiring that dancers and entertainers split their tips and/or gratuities with Defendants; refusing to pay any dancers or entertainers any wages whatsoever, including minimum wages; requiring dancers to pay a fee simply to work at Cheetahs; and threatening to retaliate against any dancer attempting to assert her statutory rights to be recognized as an employee. Plaintiff sustained economic injury as a result of Defendants' employment practices. Plaintiff and the members of the COLLECTIVE ACTION GROUP were and are similarly or identically harmed by the same unlawful, deceptive, unfair, and pervasive pattern of misconduct engaged in by the Defendants; and

(d)  The representative Plaintiff will fairly and adequately represent and protect the interest of the COLLECTIVE ACTION GROUP, and has retained attorneys who are competent and experienced in similar litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the COLLECTIVE ACTION GROUP that would make collective treatment inappropriate. Counsel for the COLLECTIVE ACTION

GROUP will vigorously assert the claims of the entire COLLECTIVE ACTION GROUP.

## THE CALIFORNIA CLASS

67.     Plaintiff also brings claims under California Law as a class action pursuant to Rule 23 of the FRCP on behalf of a CALIFORNIA CLASS, which consists of:

> All California citizens, who at any time from the date four years prior to the original filing of the Complaint through the present, worked as a dancer or entertainer at Cheetahs Gentlemen's Club ("Cheetahs") in San Diego, California, and were designated and/or classified by Cheetahs as an "independent contractor."

68.     To the extent equitable tolling operates to toll claims by the CALIFORNIA CLASS against Defendants, the applicable statute of limitations or recovery period should be adjusted accordingly.  At least one member of the CALIFORNIA CLASS is a citizen of a state other than California, and Plaintiff is informed and believes that the amount in controversy in the Complaint exceeds the sum or value of $5,000,000.

69.     Plaintiff and her fellow dancers are victims of Defendants' widespread, repeated, and consistent illegal policies that have resulted in violations of the dancers' rights.

70.     Defendants, as a matter of corporate policy, practice, and procedure, and in violation of the applicable California Labor Code, Industrial Welfare Commission ("IWC") Wage Order Requirements, and other applicable provisions of California law, intentionally, deliberately, knowingly, and willfully misclassified dancers as "independent contractors," required dancers to split their tips and/or gratuities with Defendants, required dancers to pay a fee simply to work, threatened retaliation against anyone who asserted her authority to be recognized as an employee, and refused to pay all compensation owed to Plaintiff and the other members of the CALIFORNIA CLASS for their hours worked.

71. This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Rule 23 of the FRCP, in that:

(a) The persons who comprise the CALIFORNIA CLASS are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b) Nearly all factual, legal, statutory, declaratory, and injunctive relief issues that are raised in this Complaint are common to the CALIFORNIA CLASS and will apply uniformly to every member of the CALIFORNIA CLASS;

(c) The claims of the representative Plaintiff is typical of the claims of each member of the CALIFORNIA CLASS. Plaintiff, like all other members of the CALIFORNIA CLASS, was subjected to Defendants' illegal practice of refusing to pay any wages and misclassifying her as an independent contractor. Plaintiff sustained economic injury as a result of Defendants' employment practices. Plaintiff and the members of the CALIFORNIA CLASS were and are similarly or identically harmed by the same unlawful, deceptive, unfair, and pervasive pattern of misconduct engaged in by Defendants; and

(d) The representative Plaintiff will fairly and adequately represent and protect the interest of the CALIFORNIA CLASS, and has retained attorneys who are competent and experienced in Class Action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the CALIFORNIA CLASS that would make class certification inappropriate. Counsel for the CALIFORNIA CLASS will vigorously assert the claims of all Class Members.

72.     In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23 of the FRCP, in that:

(a)     Without class certification and determination of declaratory, injunctive, statutory, and other legal questions within the class format, prosecution of separate actions by individual members of the CALIFORNIA CLASS will create the risk of:

1)      Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA CLASS, which would establish incompatible standards of conduct for the parties opposing the CALIFORNIA CLASS; and/or,

2)      Adjudication with respect to individual members of the CALIFORNIA CLASS, which would as a practical matter be dispositive of interests of the other members not a party to the adjudication or would substantially impair or impede their ability to protect their interests.

(b)     The parties opposing the CALIFORNIA CLASS have acted or refused to act on grounds generally applicable to the CALIFORNIA CLASS, making class-wide relief appropriate with respect to the CALIFORNIA CLASS as a whole.

(c)     Common questions of law and fact exist as to the members of the CALIFORNIA CLASS, with respect to the practices and violations of California Law as listed above, and predominate over any question affecting only individual members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1        1)      The interests of the members of the CALIFORNIA CLASS in individually controlling the prosecution or defense of separate actions;

2)      The extent and nature of any litigation concerning the controversy already commenced by or against members of the CALIFORNIA CLASS;

3)      The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

4)      The difficulties likely to be encountered in the management of a Class Action; and,

5)      The basis of Defendants' conduct towards Plaintiffs and the CALIFORNIA CLASS.

73.     The class is ascertainable.

74.     Furthermore, Defendants maintain records from which the Court can ascertain and identify by job title each of Defendants' employees who have been systematically, deliberately, intentionally, and uniformly subjected to Defendants' unlawful behavior. The records of Defendants will identify which employees failed to receive compensation to which they were entitled, who were misclassified as independent contractors, and who were forced to share tips and/or gratuities with Defendants.

**FIRST CAUSE OF ACTION**
**BY PLAINTIFFS ON BEHALF OF THEMSELVES AND THE**
**COLLECTIVE ACTION GROUP FOR FAILURE TO PAY WAGES DUE**
**UNDER THE FLSA**
**(Collective Action under the FLSA against Defendants**
**Red Eyed Jack's Sports Bar, Inc., dba Cheetahs Gentlemen's Club or**
**Cheetahs Nightclub, Suzanne Coe, and Does 1 – 100)**

75.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76.     Defendants knowingly, willfully, deliberately, and intentionally failed to compensate Plaintiff and the COLLECTIVE ACTION GROUP all wages due and

owed under the FLSA, including tips and/or gratuities, agreed-upon wages, and the applicable minimum hourly wage as mandated by 29 U.S.C. section 206(a).

77.    Further, as detailed above, the FLSA prohibits reduction or offset of minimum wage with tips received unless the employer pays at least $2.13 per hour in cash wages and also adheres to specific notification requirements. *See* 29 U.S.C. § 203(m). Furthermore, federal law provides that tips belong to and are the property of the person they are given to. *See Oregon Restaurant and Lodging Ass'n*, *supra*, 816 F.3d at 1095.

78.    Thus, Defendants also violated the FLSA by forcing Plaintiff and the COLLECTIVE ACTION GROUP to split their tips with them and/or their employees and/or agents. Further, Defendants' requirement that dancers split their tips with those who do not customarily receive tips (manager, door, etc.) is not part of a valid tip pooling or tip sharing arrangement.

79.    Because of Defendants' willful violation of the FLSA, Plaintiff and the COLLECTIVE ACTION GROUP are entitled to recover from Defendants, jointly and severally, their unpaid wages, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, pursuant to the FLSA, all in an amount to be determined at trial. *See* 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**BY PLAINTIFF AND THE CALIFORNIA CLASS FOR**
**VIOLATIONS OF THE CALIFORNIA LABOR CODE**
**(Class Action under FRCP Rule 23 Against Defendants**
**Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club**
**or Cheetahs Nightclub, Suzanne Coe, and Does 1 – 100)**

80.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

81.    Plaintiff brings this claim individually and on behalf of the CALIFORNIA CLASS.

82.    Defendants violated numerous provisions of the California Labor Code including those requiring: (a) the payment of minimum wages, (b) the payment of

overtime, (c) adequate rest and meal breaks, and (d) the reimbursement of necessary work expenditures. Defendants also implemented an illegal tip skimming operation and failed to provide accurate itemized wage statements.

**A.    Defendant Failed to Pay Required Minimum Wages.**

83.    California Labor Code section 1194 requires employers, like Defendants, to pay all employees minimum wages. Cal. Lab. Code § 1194, subd. (a) ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.").

84.    California Labor Code section 1197(a) also states that "the payment of a less wage than the minimum so fixed is unlawful." Cal. Lab. Code § 1197, subd. (a).

85.    Defendants never paid the dancers, including Plaintiff, *any* wages, thereby violating California's Labor Code.

**B.    Defendants Failed to Pay the Required Overtime.**

86.    Employers, like Defendants, must also pay premium or overtime rates when employees work beyond specific daily or weekly limits. Employees in California shall receive compensation not less than one-and-one-half times the regular rate of pay in excess of eight hours per day, in excess of 40 hours in a workweek, and for working the first eight hours on the seventh consecutive workday in a single workweek. Members of the CALIFORNIA CLASS, including Plaintiff, did not receive overtime compensation from Defendants even though they worked the required hours.

**C.    Defendants Did Not Provide the Requisite Breaks.**

87.    Defendants also failed to provide Plaintiff and the CALIFORNIA CLASS paid rest breaks. Additional wages, including minimum wage, are due for this time.

88.     As to meal breaks, California Industrial Welfare Commission Wage Order No. 10 and California Labor Code section 512 mandate that no employer shall employ any person for a work period of more than five hours without a meal period of not less than 30 minutes, except that when a work period of not more than six hours will complete the day's work, it may be waived with mutual consent.  If an employer does not afford employees meal periods as required, it must pay an additional one hour of compensation for each meal period the employer fails to provide.

89.     CALIFORNIA CLASS members, including Plaintiff, have consistently worked over five hour periods with no meal breaks and without the required waiver. Class members, including Plaintiff, were not provided meal periods or the premium pay to compensate for the missed meal periods.

**D.     Defendants Failed to Indemnify or Reimburse for Necessary Work Expenses.**

90.     California Labor Code section 2802 states:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802.

91.     As part of the job, Defendants made CALIFORNIA CLASS members, including Plaintiff, buy makeup and lingerie ("Supplies") from third parties in order to carry out their job duties in accordance with Defendants' policies.  Defendants maintained and continue to maintain a policy requiring all of their dancers to maintain a certain appearance, including particular amounts and styles of clothing, when performing on the main stage and during the predetermined private dances.

**E.     Defendants Implemented an Illegal Tip-Skimming Policy.**

92.     California Labor Code section 350(e) states that any amounts paid by a patron directly to a dancer are a gratuity or tip belonging to the dancer.  In fact, the

COLLECTIVE AND CLASS ACTION COMPLAINT

California Department of Industrial Relations Division of Labor Standards Enforcement issued an opinion letter dated June 22, 2001, interpreting California Labor Code section 350(e), as amended by Assembly Bill 2509 ("Opinion Letter"). The Opinion Letter stated: "…a patron at a striptease theater gives $30 to a dancer, consisting of $20 for the dance fee (which may have been pre-set by the employer) plus $10 as an additional amount for the dancer's services. Under AB 2509, the dancer is entitled to keep the entire $30."

93.   The Opinion Letter also discussed the legislative intent behind AB 2509 and noted that "[o]ver the past seven or eight years the State Labor Commissioner's office has received substantial numbers of complaints from dancers about being forced to pay 'stage fees' to their employers in order to be granted the 'privilege' of working. These 'stage fees,' often in the amount of several hundred dollars per shift, were taken from the amounts that customers paid to dancers for their services. Dancers' organizations were instrumental in supporting the legislation that clearly prohibits this practice."

94.   Further, as detailed above, California law prohibits the reduction or offset of minimum wage with tips received. *See* Cal. Lab. Code § 351. Furthermore, California Labor Code section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

95.   Thus, Defendants violated California Labor Code sections 350, 351, and 221 by forcing members of the CALIFORNIA CLASS, including Plaintiff, to split their tips with them and/or their employees and/or agents. Further, Defendants' requirement that dancers in the CALIFORNIA CLASS split their tips with those who do not customarily receive tips (manager, door, etc.) is not part of a valid tip pooling or tip sharing arrangement.

### F.  Defendants Failed to Provide Accurate Wage Statements.

96.    Finally, California Labor Code section 226(a) requires Defendants to furnish each employee, at the time wages are paid, with a statement containing an accurate, dated, itemized account, in legible writing, showing, among other things, the gross and net wages earned, the total number of hours the employee worked, all deductions, the dates of the pay period, the employee's name and identification number, the employer's name and address, and all applicable hourly rates in effect during the time period.  Defendants did not provide these wage statements to Plaintiff or members of the CALIFORNIA CLASS.

97.    As a consequence of all of the above-described illegal behavior, Plaintiff seeks, on behalf of herself and the CALIFORNIA CLASS, unpaid wages (including premium pay for missed breaks) at the required legal rate for all hours worked during the relevant time period, back pay, reimbursement from wrongfully retained tips, liquidated damages, interest, penalties, attorneys' fees and costs, and all other damages, penalties, and relief this Court deems is just, equitable, and permitted by law.

### THIRD CAUSE OF ACTION
### BY PLAINTIFF AND THE CALIFORNIA CLASS FOR CONVERSION
#### (Class Action under FRCP Rule 23 Against
#### Defendants Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club
#### or Cheetahs Nightclub, Suzanne Coe, and Does 1 – 100)

98.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99.    Plaintiff brings this claim individually and on behalf of the CALIFORNIA CLASS.

100.   Defendants violated both California Labor Code sections 350 and 351 by forcing members of the CALIFORNIA CLASS to split their tips with them and/or their employees and/or agents.  By doing so, Defendants wrongfully took possession of monies belonging to Plaintiff and other members of the CALIFORNIA CLASS.

101.   Plaintiff and the CALIFORNIA CLASS members did not consent to Defendants' taking and retention of such funds.

102.   As a direct and proximate result of Defendants' conversion of Plaintiff's and the CALIFORNIA CLASS's tips and/or gratuities, Plaintiff and the CALIFORNIA CLASS have sustained and will continue to sustain damages.  The precise nature and amount of such accrued and continuing damages is not known by Plaintiff and cannot be ascertained now, but such damages are both determinable and substantial.

103.   In committing these acts, Defendants acted with oppression, fraud, malice, and willful conscious disregard of Plaintiff's and the CALIFORNIA CLASS members' rights, thereby entitling all dancers to punitive damages.

104.   Plaintiff requests, individually and on behalf of members of the CALIFORNIA CLASS, damages, including punitive damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**BY PLAINTIFF AND THEIR FELLOW DANCERS FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***
**(Class Action under FRCP Rule 23 against Defendants Red Eyed Jack's Sports Bar, Inc. dba Cheetahs Gentlemen's Club or Cheetahs Nightclub, Suzanne Coe, and Does 1 – 100)**

105.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106.   Plaintiff brings this claim individually and on behalf of her fellow dancers.

107.   Defendants are a "person" as that term is defined under California Business and Professions Code section 17021.

108.   California Business and Professions Code section 17200, *et seq*. (the "UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.  Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

Cal. Bus. & Prof. Code §17203.

109.     Through the conduct alleged here, Defendants have engaged in an unlawful business practice by violating the FLSA and California law, including but not limited to: provisions of Wage Orders; the Regulations implementing the Fair Labor Standards Act as enacted by the Secretary of Labor; the California Labor Code; the Code of Federal Regulations and the California Code of Regulations; and the opinions of the Department of Labor Standards Enforcement, including but not limited to, California Labor Code sections 201, 202, 208, 226, 226.7, 350, 351, 356, 510, 512, 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, and 2802, for which this Court should issue declaratory, injunctive, and/or other equitable relief, pursuant to California Business and Professions Code section 17203 as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

110.     Defendants' violations of the Employment Laws and Regulations, as alleged here, include, but are not limited to, decisions to: (1) misclassify dancers and entertainers as independent contractors, as opposed to employees, (2) require that dancers and entertainers split their tips and/or gratuities with Defendants, (3) not pay any dancers or entertainers any wages whatsoever, including minimum wages, (4) adopt and implement employment policies that violate the California Labor Code, (5) require that dancers pay a fee simply to work at Cheetahs, and (6) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.

111.     The business acts and practices of Defendants in violating the California Labor Code and IWC Wage Orders, as described above, constitute an unlawful, unfair,

and/or fraudulent business practice in violation of the UCL.  Specifically, Defendants conducted business activities while failing to comply with the legal mandates cited here.

112.   Defendants' knowing failure to adopt policies in accordance with and/or adherence to these laws, all of which are binding upon and burdensome to Defendants' competitors, endangers an unfair competitive advantage for Defendants, thereby constituting an unfair business practice, as set forth in California Business and Professions Code sections 17200 through 17208.

113.   By and through the unfair and unlawful business practices described above, Defendants have obtained valuable property, money, and services from Plaintiff and her fellow dancers and have deprived them of valuable rights and benefits guaranteed by law, all to their detriment and to the benefit of Defendants so as to allow Defendants to unfairly compete.  Declaratory and injunctive relief is necessary to prevent and remedy this unfair competition, and pecuniary compensation alone would not afford adequate and complete relief.

114.   All the acts described here are immoral, unethical, oppressive, and unscrupulous, and are likely to deceive employees, thereby constituting deceptive, unfair, and unlawful business practices in violation of California Business and Professions Code section 17200, *et seq*.

115.    Plaintiff and her fellow dancers are further entitled to, and do, seek a declaration that the above described business practices are deceptive, unfair, and/or unlawful, and that injunctive relief should be issued restraining Defendants from engaging in any of these deceptive, unfair, and unlawful business practices in the future.

116.   Plaintiff and her fellow dancers have no plain, speedy, and/or adequate remedy at law that will end the unfair and unlawful business practices of Defendants. Further, the practices alleged presently continue to occur unabated.  As a result of the unfair and unlawful business practices described above, Plaintiff and her fellow

dancers have suffered, and will continue to suffer, irreparable harm unless Defendants are restrained from continuing to engage in these unfair and unlawful business practices.

117. As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiff and her fellow dancers. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiff and her fellow dancers.

118. In addition, pursuant to California Code of Civil Procedure section 1021.5, Plaintiff and her fellow dancers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on her own behalf and on behalf of those similarly situated, prays for judgment as follows:

1. For an order certifying the federal claims as a collective action;

2. For an order certifying as a class action, under Rule 23, the state law claims;

3. For back pay, unpaid wages, and a refund of all tips paid by Class members to Defendants or their agents and/or employees;

4. For consequential damages, according to proof;

5. For a declaration that Defendants violated the rights of Plaintiffs and those similarly situated under the California Labor Code and the FLSA;

6. For liquidated damages, according to proof, pursuant to California Labor Code section 1194.2 and the FLSA;

7. For waiting time penalties according to proof pursuant to California Labor Code section 203;

8. For nominal and compensable damages;

9. For punitive damages;

10. For restitution of all monies due to Plaintiff and the California Class and disgorged profits from the unlawful business practices of Defendants;

11. For all penalties available under the FLSA and the California Labor Code;

12. For an injunction to prohibit Defendants from engaging in the unfair business practices complained of here;

13. For an injunction requiring Defendants to give notice to persons to whom restitution is owed of the means by which such persons may file for restitution;

14. For actual damages or statutory penalties according to proof as set forth in California Labor Code section 226;

15. For pre-judgment interest as allowed by California Labor Code sections 218.5 or 1194 and California Civil Code section 3287;

16. For reasonable attorneys' fees, expenses and costs as provided by California Labor Code sections 226 or 1194, Code of Civil Procedure section 1021.5, and the FLSA; and

17. For such other relief that the court may deem just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a trial by Jury.

Respectfully submitted:

Dated: May 31, 2017         **NICHOLAS & TOMASEVIC, LLP**


By:    /s/   Craig M. Nicholas
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Attorneys for Plaintiffs
CIERRA DAVIS
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org