# EXHIBIT B

Suzanne Coe                                                    April 20, 2016

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                    FOR THE COUNTY OF SAN DIEGO

 3

 4   JASMINE HAYES, on behalf of      )
     herself and on behalf of other   )
 5   current and former employees,    )
                                      )
 6              PLAINTIFF,            )   CASE NO.
                                      )   37-2015-0020911-CU-CT-
 7     VS.                            )   CTL
                                      )
 8   RED EYED JACK'S SPORTS BAR,      )
     INC. Dba CHEETAHS GENTLEMEN'S    )
 9   CLUB or CHEETAHS NIGHTCLUB, a    )
     Nevada Corporation; SUZANNE      )
10   COE, an individual; and ROES     )
     1-100,                           )
11                                    )
                DEFENDANTS.           )
12   _____  )

13

14

15

16

17

18              DEPOSITION OF SUZANNE COE

19              SAN DIEGO, CALIFORNIA

20                 APRIL 20, 2016

21

22

23

24       Reported by: Kasey L. Mobley, CSR No. 13407

25
```

THORSNES LITIGATION SERVICES, LLC  |  877.771.3312  |  www.thorsnes.com

Suzanne Coe                                                    April 20, 2016

1      Q.  When you took over or became involved with the
2   running of Cheetahs, did you do any legal analysis of the
3   current employment policies in place?
4      MR. HOFFMAN:  Objection, calls for legal reasoning.
5      THE WITNESS:  I don't really remember.  To be honest
6   with you, that's so long ago.  I've had health problems
7   from then to now, too.  It's been juggling a mess.  So I
8   don't remember.
9   BY MR. TOMASEVIC:
10     Q.  I understand.  To your knowledge, before this
11  lawsuit was filed, has anyone ever analyzed whether the
12  independent contractor classification of dancers is proper
13  or legal at all?
14     A.  Besides me?
15     Q.  Right.
16     A.  No, besides me.
17     Q.  So you did do an analysis yourself, though?
18     A.  Yes.
19     Q.  When did you do that?
20     MR. HOFFMAN: Objection, vague as to "analysis."
21     THE WITNESS:  I would think I always do that.  If I
22  came in the club and saw that there were rules in the club
23  that were being applied to independent contractors, I would
24  go ballistic because they're not subject to any rules.
25  It's a constant thing.

Suzanne Coe                                                    April 20, 2016

```
 1        A.  Maybe.  I don't want to guess, though.  Sometimes
 2   people come and go very quickly and sometimes people will
 3   stay.
 4        Q.  Would you say Cheetahs has used over a hundred
 5   contractor dancers over the last five years?
 6        MR. HOFFMAN:  Objection, calls for speculation.
 7        Go ahead and answer.
 8        THE WITNESS:  I would say there's been over a hundred
 9   different entertainers at Cheetahs for the last five years.
10   BY MR. TOMASEVIC:
11        Q.  Has Cheetahs ever paid any dancer minimum wage, to
12   your knowledge?
13        A.  To my knowledge, no employee -- no entertainer has
14   opted to be paid by hour.  But what they've made there as
15   independent contractors would exceed, usually, minimum
16   wage, I would think.
17        Q.  I just want to know if Cheetahs has paid flat
18   minimum wage to any entertainer, dancer.
19        A.  Not that I'm aware of.
20        Q.  Has Cheetahs, at any point, paid any dancer
21   overtime wages?
22        A.  Not that I'm aware of.
23        Q.  Has Cheetahs, at any point in time, ever given any
24   dancer an itemized wage statement?
25        A.  Not that I'm aware of.
```

THORSNES LITIGATION SERVICES, LLC  |  877.771.3312  |  www.thorsnes.com

Suzanne Coe                                                     April 20, 2016

```
 1     dinner at a restaurant.  You don't have to leave one.  Next
 2     time you go there, you might not get speedy service.
 3          Q.  Because there's repercussions to not tipping?
 4          A.  Everybody likes to be treated nice and a thank you
 5     for helping.  But you don't have to ever.
 6          Q.  Who decided to leave tip-outs as a voluntary
 7     process?
 8          A.  Since I've been involved, I thought tip-outs should
 9     be voluntary.
10          Q.  Was it not voluntary before you got there?
11          A.  I don't know.  Since I've been there, it has been.
12          Q.  Did you implement that, or was it in place before
13     you got there?  Or do you not know?
14          A.  I don't remember.
15          Q.  When you first discussed the issue of tip-outs,
16     when can you first remember doing that?
17          A.  I can't remember that.
18          Q.  Do you remember what was said?
19          A.  No, I don't remember that.
20          Q.  Are there any writings or notes or materials that
21     would reflect what was said and when it was said?
22          A.  Not that I know of right now.
23          Q.  There's something called a house fee at Cheetahs;
24     is that right?
25          A.  Yeah, like, a daily rent.  You can call it a house
```

Suzanne Coe                                                                                     April 20, 2016

```
 1   fee, but it's a rent or daily rent.
 2        Q.  Does a dancer have to pay a fee at the beginning of
 3   her shift to the club?
 4        A.  She's an independent contractor.  There would be a
 5   rental fee.  If she would be an employee, then no.
 6        Q.  Well, there are no employees.  So all the dancers
 7   pay a rental fee or house fee?
 8        A.  Right.
 9        Q.  Let's talk about that for a second.  What is the
10   fee?
11        A.  Depending on the time, the business, the -- it can
12   range from $40 to $100.  But if an entertainer has not made
13   more than $100, more than what the fee would be, most of
14   them pay it at the end.  They don't pay at the beginning.
15        Q.  That answers a couple of my questions.  Let me make
16   sure I've got a good understanding of how it works.  There
17   is a rental fee or house fee, but it can be paid at the end
18   of the shift, right?
19        A.  Yes.
20        Q.  And all dancers have to pay that fee?
21        A.  All independent contractor dancer.
22        Q.  But they're all independent contractors so --
23        A.  Right.  No one has opted to be an employee.
24        Q.  And that fee ranges from 40 to $100 depending on
25   certain circumstances?
```

THORSNES LITIGATION SERVICES, LLC  |  877.771.3312  |  www.thorsnes.com

Suzanne Coe                                                    April 20, 2016

1        A.   Right.

2        Q.   The minimum is $40?

3        A.   Unless, say, an entertainer that night only made

4    $130, then by giving us 40, she wouldn't make $100, so she

5    wouldn't get charged $40.  She wouldn't have to pay a fee

6    that night.

7        Q.   So there's a policy in place such that all dancers

8    have to earn, take home, $100?

9        A.   At least, yes.

10       Q.   And how long has that been a policy?

11       A.   Very long.  I don't know how many years, but it

12   seems like it's always been a policy.

13       Q.   It's been a policy in place at Cheetahs for at

14   least the last five years?

15       A.   I believe so, yes.

16       Q.   So unless a dancer earns a $140 or more, they're

17   not going to pay a house fee?

18       A.   Correct.

19       Q.   As soon as they've earned $140, what is the minimum

20   house fee?

21       A.   It depends -- the minimum fee would be $40, and I

22   believe the maximum is 100, but it has to do with the days

23   of the week.  If it's a Friday night or Saturday night or

24   it's -- it could be a person worked, you know, they could

25   make more money and only have to pay $40.  It's up to them.

THORSNES LITIGATION SERVICES, LLC  |  877.771.3312  |  www.thorsnes.com

Suzanne Coe                                                    April 20, 2016

```
 1                    REPORTER'S CERTIFICATE

 2

 3       I, KASEY L. MOBLEY, a Certified Shorthand Reporter in

 4    and for the State of California, do hereby certify:

 5

 6       That the foregoing witness was by me duly sworn; that

 7    the deposition was then taken before me at the time and

 8    place herein set forth; that the testimony and proceedings

 9    were reported stenographically by me and later transcribed

10    into typewriting under my direction; that the foregoing is

11    a true record of the testimony and proceedings taken at

12    that time.

13

14       IN WITNESS WHEREOF, I have subscribed my name on this

15    date: 05/06/16

16

17

18

19

20       _____

         Kasey L. Mobley, CSR No. 13407.
21

22

23

24

25
```

THORSNES LITIGATION SERVICES, LLC  |  877.771.3312  |  www.thorsnes.com